Reversed and Remanded and Plurality, Concurring, and
Dissenting Opinions filed March 31, 2009.

                                                                                                                                                            

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00341-CV

____________

 

DAVID HERNANDEZ, Appellant

 

V.

 

BRINKER INTERNATIONAL, INC., Appellee

 



 

On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 2005-63422

 



 

P L U R A L I T Y   O P I N I O N

David Hernandez appeals from the trial court=s grant of Brinker
International, Inc.=s summary-judgment motion based on Chapter
95 of the Texas Civil Practice and Remedies Code.  We reverse and remand.








Facts and Procedural History

At the time of the events giving rise to this lawsuit,
Brinker International, Inc., owned and operated a Chili=s restaurant at
1040 W. Sam Houston Parkway in Houston.  In early 2005, Brinker retained an
air-conditioning contractor for routine maintenance and as-needed repairs to
the restaurant=s air-conditioning system.  On March 10, the
contractor assigned its employee David Hernandez to replace a compressor motor
in an air-conditioner located on the roof of the restaurant.  Hernandez removed
the original compressor and planned to carry it toward a point on the roof from
which he could lower it to the ground.  As he stepped away from the
air-conditioner with the compressor in his arms, the roof collapsed and the
right side of his body fell through the opening.[1]


In October that same year, Hernandez filed the underlying
lawsuit against Brinker alleging that it failed to exercise ordinary care in
maintaining the restaurant premises, specifically the roof.  He claimed that as
a result of his fall on March 10, he suffered injuries to his left leg, lower
back, and right shoulder, foot, knee, and hip.  Hernandez sought damages for
physical impairment, medical expenses, past and future lost wages, mental
anguish, and physical pain.

Discovery revealed that a few weeks before March 10,
Brinker had scheduled replacement of the restaurant=s roof because it
was leaking and had at least one Asoft spot.@ But the
restaurant=s manager, an employee of Brinker, did not tell
Hernandez before he started work that there were any problems with the roof. 
In his answers to interrogatories, Hernandez claims that when Hernandez
reported his fall to the restaurant manager, the manager then told Hernandez
there had been existing problems with the roof and that it was scheduled to be
replaced.








In the trial court, Brinker filed a motion for summary
judgment contending that Chapter 95 of the Texas Civil Practice and Remedies
Code precluded Hernandez=s recovery against Brinker.  See
Tex. Civ. Prac. & Rem. Code Ann. '' 95.001B.004 (Vernon
2005).  Specifically, Brinker argued it could have no liability to Hernandez,
the employee of a contractor, because Hernandez himself testified that Brinker
exercised no control over his work on the air-conditioning unit.  See id.
' 95.003
(precluding property owner=s liability for injury to employee of a
contractor unless owner exercises control over performance of the work and had
actual knowledge, but failed adequately to warn, of the danger that resulted in
injury).[2]

The trial court granted Brinker=s summary-judgment
motion on March 21, 2007.  Hernandez timely filed this appeal.

Standard of Review

We review issues of statutory construction de novo.  Subaru
of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 222 (Tex.
2002).  We are not required to resort to extrinsic aids to define the meaning
of a clear and unambiguous statute.  St. Luke=s Episcopal Hosp.
v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997).  When the meaning of statutory
language is unambiguous, we adopt the interpretation of the statute supported
by the plain meaning of the provision=s words.  Id.








Analysis

Section 95.003 of the Texas Civil Practice and Remedies
Code provides:

A property owner is not liable for personal injury, death, or property
damage to a contractor, subcontractor, or an employee of a contractor or
subcontractor who constructs, repairs, renovates, or modifies an improvement to
real property, including personal injury, death, or property damage arising
from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the
manner in which the work is performed, other than the right to order the work
to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual
knowledge of the danger or condition resulting in the personal injury, death,
or property damage and failed to adequately warn.

Tex.
Civ. Prac. & Rem. Code Ann. ' 95.003. 
Hernandez contends the trial court committed an error of law in granting
summary judgment for Brinker because, even if the record contained conclusive
proof that Brinker did not control the work or did not have actual knowledge of
the danger (or knew but adequately warned), Chapter 95 does not apply to
Hernandez=s claims. 

According to Hernandez, Chapter 95 would apply only if his
claim arose from the condition or use of the improvement he was repairing, the
air-conditioning system.  Because his claim arises from the condition of a
different improvement, the roof, Hernandez argues Chapter 95 does not apply. 
He bases his argument on the language of section 95.002.  

Section 95.002, entitled AApplicability,@ provides:

This chapter applies only to a claim:

(1) against a property owner, contractor, or subcontractor for personal
injury, death, or property damage to an owner, a contractor, or a subcontractor
or an employee of a contractor or subcontractor; and

(2) that arises from the condition
or use of an improvement to real property where the contractor or subcontractor
constructs, repairs, renovates, or modifies the improvement. 








Id. ' 95.002.  AClaim@ is defined, for
purposes of Chapter 95, as Aa claim for damages caused by
negligence[.]@  Id. ' 95.001(1).  Hernandez=s action, alleging
negligence against Brinker and seeking damages caused by such negligence, is
such a claim.  There is no dispute that at the time of his fall, Hernandez was
an employee of a contractor or that Brinker was the property owner.  Thus, on a
linear reading of section 95.002, through and including subsection (1),
Hernandez=s action appears to satisfy the elements of the
chapter=s applicability. 
On appeal, however, Hernandez=s focus is directed, and our analysis now
turns, to subsection (2).

Under subsection (2), the claim must Aarise[] from the
condition or use of an improvement to real property where the contractor . . .
constructs, repairs, renovates, or modifies the improvement.@  Id. ' 95.002(2). 
Hernandez insists this language requires the claim to arise from the condition
or use of the particular improvement on which the contractor is working.  Using
the facts of this case, Hernandez reads the statute as: AThis chapter
applies only to a claim . . . that arises from the condition or use of the
roof where the contractor or subcontractor constructs, repairs, renovates,
or modifies the roof.@  Hernandez maintains Chapter 95 does not
apply because his claim arises from the condition or use of the roof where
he was repairing the air-conditioner.  

Brinker concedes that Hernandez was working to repair or
modify the restaurant=s air-conditioning system and that his
alleged damages arise from the condition or use of the roof.  Brinker contends,
however, that Hernandez misconstrues the meaning of the term Aimprovement@ as used in the
statute.  According to Brinker, the entire restaurant building is the Aimprovement,@ and the
air-conditioner is a mere Afixture@ to the building. 
Brinker relies on these definitions from Black=s Law Dictionary:








Improvement: A valuable addition made to property (usually real estate)
or an amelioration in its condition, amounting to more than mere repairs or
replacement, costing labor or capital, and intended to enhance its value,
beauty, or utility or to adapt it for new or further purposes.  Generally has
reference to buildings, but may also include any permanent structure or other
development such as a street, sidewalk, sewer utilities, etc.[3]

Fixture: An article in
the nature of personal property which has been so annexed to the realty that it
is regarded as part of the real property.... A thing is deemed to be affixed to
real property when it is attached to it by its roots, imbedded in it, permanently
resting upon it, or permanently attached to what is thus permanent, as by means
of cement, plaster nails, bolts or screws.  Goods are fixtures when they become
so related to particular real estate that an interest arises in them under real
estate law; e.g. a furnace attached to a house or other building; counters
permanently affixed to a floor of a store, a sprinkler system installed in a
building.[4]

Thus,
in the context of this case, Brinker would read the statute as: AThis chapter
applies only to a claim . . . that arises from the condition or use of the
building where the contractor or subcontractor constructs, repairs,
renovates, or modifies the building (including fixtures subsumed as part of
the improvement).@  Brinker contends section 95.002(2) makes
Chapter 95 applicable here because Hernandez=s claim arises
from the condition of the restaurant and Hernandez was repairing or modifying
(a fixture to) the restaurant. 

As Hernandez notes, however, Brinker=s
dictionary-based, restricted construction of the term Aimprovement@ finds no support
in Texas jurisprudence.  The Texas Supreme Court has stated:

To constitute an improvement there
must be a joinder of personalty with realty.  It is critical to distinguish
among the three concepts involved in determining whether an object is an
improvementCthe personalty, the realty to which the personalty is
annexed, and the result, the improvement.  There can be no improvement without
annexation to realty, and until personalty is annexed to realty, it by
definition cannot be an improvement.  Only upon annexation does the personalty
lose its characteristics as personal property and become viewed as an
improvement.













Sonnier
v. Chisholm-Ryder Co., Inc., 909 S.W.2d 475, 479 (Tex. 1995).[5] 
Under this definition of improvement, many articles seeming to fall within
Brinker=s above-quoted
definition of Afixtures@ have been found
to constitute an improvement.  See, e.g., Sonnier, 909 S.W.2d at 479B83 (acknowledging
jury finding that tomato chopper was an improvement when installed in
commercial cannery); Reames v. Hawthorne-Seving, Inc., 949 S.W.2d 758,
761B62 (Tex. App.CDallas 1997, pet.
denied) (holding conveyor belt on wheels was an improvement although only
constructively annexed to realty); Hernandez v. Koch Mach. Co., 16
S.W.3d 48, 52 (Tex. App.CHouston [1st Dist.] 2000, pet. denied)
(addressing statute-of-repose defense posed by manufacturer of steel-slitting
machine, installed at plant, which all parties agreed was an improvement under
Texas law); Citizens Nat=l Bank v. City of
Rhome, 201 S.W.3d 254, 259B60 (Tex. App.CFort Worth 2006,
no pet.) (holding fuel dispensers, attached to concrete slab at gas station
premises, are improvements to realty and not subject to sale as personalty
pursuant to tax warrant); Brown & Root Inc. v. Shelton, ___ S.W.3d
___, No. 12-01-00259-CV, 2003 WL 21771917, at *3B4 (Tex. App.CTyler, July 31,
2003, no pet.) (holding asbestos-containing fireproofing materials, applied to
ceiling of plant, constitute an improvement to realty).[6] 
Indeed, the permanent attachment that gives an article its Afixture@ status under
Brinker=s dictionary
definition is a primary factor that makes the article an Aimprovement@ under Texas law. 
See City of Rhome, 201 S.W.3d at 257B58 (citing Logan
v. Mullis, 686 S.W.2d 605, 607B08 (Tex. 1995),
and holding that permanence is an Aoverriding element
of consideration@ in whether annexed personalty is an
improvement); Reames, 949 S.W.2d at 761 (Aalthough all
improvements are not necessarily fixtures, any fixture, unless it is a trade
fixture [that can be removed without injury to the property], is considered an
improvement@).

The roof and the air-conditioning system are separate
improvements to real property.  Section 95.002(2) states that Chapter 95
applies only to a claim Athat arises from the condition or use of an
improvement to real property where the contractor or subcontractor [repairs or
modifies] the improvement.@  Therefore,
pursuant to the plain language of section 95.002(2), Chapter 95 does not apply
to a contractor=s employee=s claim against a
property owner when the improvement the condition or use of which gives rise to
the injury claim is not the same improvement the contractor was at the premise
to address at the time of injury. 

The first judicial decision interpreting Chapter 95, which
became effective in September of 1996, reached a seemingly contrary result.  In
Fisher v. Lee and Chang Partnership, 16 S.W.3d 198 (Tex. App.CHouston [1st
Dist.] 2000, pet. denied), the employee of an air-conditioning contractor
suffered personal injuries when he fell from a ladder he was using to reach
roof-mounted equipment.  In the employee=s suit against the
property owner and property manager, the trial court granted summary judgment
for the defendants on the basis that section 95.003 shielded them from
liability because there was no evidence they exercised or retained control over
the contractor=s work or knew of the danger.  








On appeal, the employee argued that the trial court erred
because Chapter 95 would apply (and thus evidence of control and knowledge
would be relevant) only if he had been injured by the air-conditioner, the
improvement on which he was working.  To address the employee=s argument, the
court focused on language of section 95.003 stating that a property owner is
not liable for Ainjury . . . arising from the failure to
provide a safe workplace.@  Id. at 201 (quoting Tex. Civ.
Prac. & Rem. Code Ann. ' 95.003).  The court declared that the
ladder was an unsafe part of the employee=s workplace, that
his injury thus arose from the defendants= failure to
provide a safe workplace, and that A[t]he statute does
not require that the defective condition be the object of the contractor=s work.@  Id.
(footnote omitted).  In conclusion, the court stated:

[Sections] 95.002 and 95.003 are
consistent and may both be read to provide protection from liability if the
injury arose from the contractor=s work on an
improvement to real property.  Here, it did.  Appellant used the ladder to
reach the roof to perform his job, the repair of air conditioning units.

Id. 

The court then addressed Chapter 95=s legislative
history, quoting this statement, among others, from debates in the House of
Representatives.

AIf there is an
incident that is not related to the work being done by the contractor and
subcontractor, then this chapter does not apply to that.  So if you have an
explosion that=s not related to anything that the contractor and
subcontractor are doing for their purpose of being there, then this chapter
would not apply.@  (Debate on S.B. 28, House of
Representatives, 74th Leg., R.S. Trans. II-157-58 (May 3, 1995) (statement of
Rep. Junell).)

Id.
at
201B02.  Because
Representative Junell did not suggest, Aas does appellant,
that the injury-producing defect must be the object of the contractor=s work,@ the court
concluded Athe statute would apply to injuries related to the
contractor=s work.@  Id. at
202 (emphasis added).  

The court further noted that the legislators discussed a
hypothetical situation similar to that presented in Fisher.  In the
hypothetical situation, a contractor was injured when scaffolding collapsed as
he was using it to reach his work site.  Representative Combs declared that the
property owner would be liable only if it had exercised control over the
contractor=s work and knew the scaffolding was defective.  Id.
(citing Debate on S.B. 28, House of Representatives, 74th Leg., R.S. Trans.
II-153 (May 3, 1995) (statement of Rep. Combs)).  Noting that the ladder from
which Fisher fell was like the scaffolding discussed in the hypothetical
situation, and that in both scenarios that claimed injuries arose from Athe failure to
provide a safe workplace,@ the court concluded Chapter 95 applies
even when the premises defect does not exist within the specific object the
contractor is repairing.  Id.  








In its conclusion, the Fisher court stated, 

The legislative history supports the conclusion that section 95.003
protects appellees.  The scaffolding example, used by the legislators in
discussing the applicability of the statute, described a tool used for
construction, not an improvement that was being repaired or modified itself. 
The ladder here is like the scaffold in the legislative history.  It provided
appellant a means to reach his work site.  It was not the object of his work. 
Nevertheless, appellant=s injuries arose from Athe failure to provide a safe
workplace.@  See Tex. Civ. Prac. & Rem. Code Ann. ' 95.003.  

We conclude that both the plain
language and the legislative history of Chapter 95 are contrary to appellant=s contention that
the premises defect must exist within the specific object the contractor is
repairing.

Id. at 202.  Because
there was no evidence that the owner exercised control over the contractor=s work or that the
owner had actual knowledge of a danger, the court affirmed the summary judgment
for the owner.








In affirming the summary judgment, it appears that the Fisher
court=s analysis overly
extended Chapter 95=s reach.  The court relied on
Representative Combs=s statement that the statute would apply
when scaffolding, a workplace tool, caused injury, see id., rather than
relying on the express language in section 95.002 that Chapter 95 applies only
where a claim arises from Aa condition or use of an improvement.@  See Tex.
Civ. Prac. & Rem. Code Ann. ' 95.002 (emphasis
added).  The court again eschewed the relevant language in section 95.002 when
it instead relied on Representative Junell=s statement that
Chapter 95 would apply if the injury-producing defect Arelates to@ a contractor=s work.  Id. 
The Code Construction Act permits consideration of legislative history, see
Tex. Gov=t Code Ann. ' 311.023(3)
(Vernon 2005), but it does not permit elevating legislative debate statements
over unambiguous statutory language.  See Canal Ins. Co. v. Hopkins, 238
S.W.3d 549, 563 (Tex. App.CTyler 2007, pet. denied) (stating that Aisolated
statements by individual legislators must be weighed against the clear language@ of a statute)
(citing Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex.
1999)).  Finally, although the Fisher court stated, ASec[tion] 95.002
clarifies the scope of sec[tion] 95.003,@ Fisher, 16
S.W.3d at 201, it gave overriding effect to section 95.003.  Id. at 202
(relying on phrase Afailure to provide a safe workplace@ in section 95.003
in holding Chapter 95 applied to claim involving fall from ladder at
workplace). 

Relying on Fisher, several courts have applied
section 95.003=s protection to property owners sued by employees of
contractors and subcontractors that were injured by the condition or use of an
improvement that the employee was not repairing or modifying.  See, e.g.,
Clark v. Ron Bassinger, Inc., No. 07-03-0291-CV, 2006 WL 229901, at *2B3 (Tex. App.CAmarillo, Jan. 31,
2006, no pet.) (mem. op.) (affirming summary judgment when plumbing employee
fell through roof skylight that had been hidden with tar paper by a roofing
contractor); Phillips v. Dow Chem. Co., 186 S.W.3d 121, 131B32 (Tex. App.CHouston [1st
Dist.] 2005, no pet.) (affirming summary judgment for plant owner in action to
recover for death of subcontractor=s employee who
fell from scaffolding as she was leaving the site of her work on a large vessel
under repair by the subcontractor); Kelly v. LIN Television of Tex., L.P.,
27 S.W.3d 564, 570 (Tex. App.CEastland 2000, pet. denied) (affirming
summary judgment for owner of television tower in action arising from
contractor=s employees= deaths in tower=s collapse during
contractor=s replacement of tower=s broadcasting
antenna).  In fact, since Chapter 95 became effective, there has not been a
reported case against a property owner to which the statute has been found not
to apply.[7]  Hernandez writes in his brief, AAlthough the Texas courts maintain
the fiction that there exist claims to which Chapter 95 does not apply, since Fisher,
they have never identified a single one.  Instead, they have moved steadily to
a situation in which a premises owner can effectively booby-trap his own
property yet escape liability for his actions under Chapter 95.@








Other courts have been perplexed by Fisher.  In Spears
v. Crown Central Petroleum Corp., 133 Fed. Appx. 129 (5th Cir. 2005) (per
curiam), the Fifth Circuit contemplated the applicability of Chapter 95 to the
claim of an independent contractor=s employee who
tripped on steel-braided hoses as he walked from the refinery unit at which he
worked to a tool shed in a separate part of the refinery premises.  The
employee contended that Chapter 95 did not apply to protect the refinery owner,
because his injury, caused by his tripping on the hoses in his path, did not
arise from the condition or use of the improvement on which he worked. 
Addressing the district court=s grant of summary judgment to the owner,
the court stated:

Although [the owner] points to an abundance of Texas cases concluding
that any injury relating to the work done on the premises is covered under
chapter 95, Arelating to@ is a much broader proposition than
is Aarising from the condition or use
of the improvement.@  

This case is
illustrative.  The injury undoubtedly was related to the work [the employee]
was doing, because it occurred while he was leaving his work site. 
Nevertheless, the alleged cause of the injury (i.e., the hoses) was
neither a condition nor a use of the heat exchanger, which was the improvement
on which [the employee] worked.

Id. at 130B31 (footnote
omitted).  The court was obviously troubled by the disconnect between section
95.002 and Texas intermediate courts= conclusions that
any injury Arelating to work done on the premises@ is covered under
Chapter 95.  But, in the absence of Texas Supreme Court authority, the Fifth
Circuit, sitting in diversity jurisdiction, was compelled to respect those
decisions.  It thus affirmed the summary judgment in the refinery owner=s favor.  Id.
at 131. 








This court has addressed Chapter 95 in only a handful of
cases.  Most recently, in Vanderbeek v. San Jacinto Methodist Hospital,
246 S.W.3d 346 (Tex. App.CHouston [14th Dist.] 2008, no pet.), we
affirmed a summary judgment against a plumbing contractor=s employee who
suffered chemical burns from a caustic substance contained in a pipe he removed
as part of his plumbing work.  In Dyall v. Simpson Pasadena Paper Co.,
152 S.W.3d 688 (Tex. App.CHouston [14th Dist.] 2004, pet. denied),
this court, sitting en banc, affirmed a take-nothing summary judgment for a
paper-mill owner in an action by a pipe-repair company=s employees for
injuries relating to the inhalation of toxic gases dripping from the pipes.  In
Ellwood Texas Forge Corp. v. Jones, 214 S.W.3d 693 (Tex. App.CHouston [14th
Dist.] 2007, pet. denied), we reversed the trial court and rendered judgment
against an air-conditioning contractor=s employee who was
injured in a fall while performing his work at a steel plant.  In Bishop v.
Nabisco, Inc., No. 14-03-00639-CV, 2004 WL 832916 (Tex. App.CHouston [14th
Dist.] Apr. 20, 2004, no pet.) (mem. op.), we modified and affirmed a
take-nothing judgment in favor of a bakery owner and against a demolition
contractor=s employee who fell from an upper floor of the bakery
through the cover of a large hole created when the contractor dismantled
certain mixing equipment.  And we affirmed a summary judgment in favor of a
refinery owner sued by a subcontractor=s employee who
tripped on a gasket he had removed from a heat exchanger in Ashabranner v.
HydroChem Industrial Services, Inc., No. 14-03-00762-CV, 2004 WL 613026
(Tex. App.CHouston [14th Dist.] Mar. 30, 2004, no pet.) (mem.
op.).

In only one of these cases did we expressly address section
95.002 and the applicability of Chapter 95.  The injured party in Vanderbeek
v. San Jacinto Methodist Hospital argued that Chapter 95 applies only when
the property owner=s liability is based on the negligence of
another party, such as an independent contractor other than the one employing
the plaintiff, rather than on the owner=s affirmative
independent negligence.  Vanderbeek claimed that the hospital committed an
independent act of negligence by pouring a caustic substance into a sink the
contractor had marked Aout of order,@ and that Chapter
95 thus did not apply to preclude the owner=s liability.  We
rejected Vanderbeek=s argument, finding nothing in the
statutory language, or legislative history, to support application of Chapter
95 only to cases involving allegations of passive or vicarious liability.  Vanderbeek,
246 S.W.3d at 351B52. 








In four of our Chapter 95 decisions, the facts could not
support the argument Hernandez makes here, because the employee=s injury was
caused by a condition or the use of the improvement he was repairing or
modifying.  See Vanderbeek, 246 S.W.3d at 348B49 (involving
plumbing contractor injured by caustic substance in plumbing pipes); Dyall,
152 S.W.3d at 695B96 (involving injury to pipe-repair
subcontractor=s employees from substance leaking from pipes); Bishop,
2004 WL 832916 at *1 (addressing demolition contractor=s injury from fall
through hole in floor resulting from demolition); Ashabranner, 2004
WL 613026, at *1 (involving subcontractor=s fall over piece
of equipment he had removed from heat exchanger).  Ellwood Texas Forge
is our sole decision involving a claim that at least arguably arose from the
condition or use of one improvement while the plaintiff was constructing,
repairing, renovating, or modifying a different improvement.  See 214
S.W.3d at 695B96.  The Ellwood plaintiff, however, failed to
raise and brief the argument presented here. 

Conclusion

Hernandez=s claim arises from the condition of the
roof, but Hernandez did not repair or modify the roof.  Hernandez repaired the
air-conditioning system.  Thus, under the plain language of section 95.002(2),
Chapter 95 does not apply to Hernandez=s claims.  Brinker
is not entitled to summary judgment by proving its lack of control or its lack
of actual knowledge, the elements of section 95.003.  We reverse the summary
judgment in Brinker=s favor and remand to the trial court for
further proceedings.

 

/s/      Jeffrey V. Brown

Justice

 

Panel consists of Justices Yates
Anderson and Brown.  (Brown, J. plurality; Anderson, J. concurring; Yates, J.
dissenting).









[1]  Hernandez gave conflicting descriptions of the event
in his trial-court pleadings and his brief to this court.  It is not material
for purposes of our review whether at the time he fell Hernandez was moving
away from the air-conditioning unit and carrying the original compressor, as
alleged in his brief to this court, or toward the unit and carrying the
replacement compressor, as alleged in his trial-court pleadings.





[2]  Without admitting it had actual knowledge that the
roof was dangerous, Brinker also argued it was entitled to summary judgment
because Hernandez admitted Brinker warned him before March 10 that the roof was
dangerous.  To support its argument, Brinker attached Hernandez=s response to an interrogatory requesting the factual
basis for any contention by Hernandez that Brinker had actual knowledge of the
alleged dangerous condition of the roof.  Hernandez responded: AThe facility and restaurant managers knew of the
potential danger since the restaurant manager told me of the dangers several
weeks prior to the work performed.  The restaurant manager also informed
[Hernandez]=s safety manager of such dangers when [Hernandez]
arrived at the job site.@  Brinker argued this response is proof that it warned
Hernandez before he undertook the work in question, so as to satisfy the
warning as well as the control prongs of section 95.003.  However, Hernandez
amended his Ainartful@
interrogatory response to read, AThe
facility and restaurant managers knew of the potential danger since the
restaurant manager told me after I was injured that he was aware of the dangers
several weeks prior to the work performed.  The restaurant manager also
informed my safety manager after I was injured that he was aware of such
dangers when I arrived at the job site.@ 
Indeed, in his deposition, the restaurant manager confirmed that he had not
told Hernandez or anyone else with the air-conditioning contractor of any
danger with the roof, either before or on March 10.





[3]  Black=s
Law Dictionary 757 (6th ed. 1990).





[4]  Black=s
Law Dictionary 638 (6th ed. 1990).





[5]  In Sonnier, responding to a certified question from the Fifth
Circuit, the Supreme Court concluded that a manufacturer whose product is annexed
to realty by another party does not Aconstruct@ an improvement to real property so as to entitle the manufacturer to
repose protection for persons who construct or repair improvements to real
property.  See Tex. Civ. Prac. & Rem. Code Ann. ' 16.009 (Vernon 2002).  The court thus reaffirmed that the product is an
improvement when annexed to realty, but clarified that the manufacturer Aconstructs@
the improvement, and is entitled to repose, only if it also participates in the
annexation.





[6]  Decisions pre-dating Sonnier reach similar
results.  See First
Nat=l Bank v. Whirlpool Corp., 517 S.W.2d 262, 266B67 (Tex. 1974) (holding garbage
disposal and dishwasher are improvements to real property); Dedmon v.
Stewart-Warner Corp., 950 F.2d 244, 249B50 (5th Cir. 1992) (holding furnace, installed in
residence, is an improvement under Texas law).





[7]  Some courts may have focused on Fisher=s pronouncement that an owner is protected if the
injury-producing condition Arelates to@ the injured contractor=s work.  This would also explain how property owners have received
protection under Chapter 95 when the employee=s injury resulted from use of a tool or other instrumentality that is
unquestionably not an improvement (as required by the statute).  See Admire v. H.E. Butt Grocery Co., No. 01-02-00060-CV, 2003 WL
203514 (Tex. App.CHouston [1st Dist.] Jan. 30, 2003,
no pet.) (mem. op.) (concluding property owner was protected from liability
when air-conditioning contractor=s employee fell from ladder after completing work on roof).