Gary VANDERBEEK, Appellant,

v.

SAN JACINTO METHODIST HOSPITAL, Appellee.

No. 14–06–00783–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 31, 2008.

Byron Miles Buchanan, Collyn A. Peddie, Houston, for appellant.

Dale Burrus Frisby, Melanie Ann Rubinsky, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

The employee of a plumbing contractor brought suit against a hospital to recover damages for injuries he sustained while working on the hospital premises. In challenging the summary judgment granted in favor of the hospital, the plumber contends that (1) the trial court erred in applying Chapter 95 of the Texas Civil Practice and Remedies Code and (2) even if Chapter 95 applies, the summary-judgment evidence raises a fact issue, and, therefore, summary judgment was improper. We affirm.

## I. Factual and Procedural Background

Appellant Gary Vanderbeek, a plumber employed by Humphrey Plumbing, sustained injuries to both legs when a caustic substance spilled on him while he was working in a building owned by appellee San Jacinto Methodist Hospital (the "Hospital"). The Hospital had contracted with Humphrey Plumbing for plumbing work necessary to remodel the Hospital's emergency room. As part of the remodel, Vanderbeek worked on a plumbing pipe within a wall. For this project, Vanderbeek cut and capped a vent line and a drainage pipe, both of which were connected to a sink in an adjacent room used for emergency care. Vanderbeek informed the emergency-room manager that the sink was out of order and should not be used. Hospital employees placed a piece of sheetrock over the sink and wrote "out of order" on the sheetrock.

After Vanderbeek performed this work, within several weeks' span, a plumber employed by the Hospital attempted to unclog the sink on two occasions. In the same time period, two other Hospital maintenance employees were called to address drainage issues with the same sink. These Hospital employees may have poured "Glug" drain cleaner into the sink. Eventually, the sink was removed as the remodeling progressed in that room.

Several weeks after his initial work, Vanderbeek returned to reconnect the pipe. No one warned Vanderbeek that a substance might be present in the pipe.

Hospital personnel were not present at the time, and he worked without direction or instructions from Hospital personnel. When Vanderbeek removed the cap to the drainage pipe, a liquid came out of the pipe and covered Vanderbeek's pants from the knees down. Vanderbeek alleged he suffered chemical burns requiring medical treatment, lost time from work, and endured extreme physical pain and emotional distress. Vanderbeek alleged that the Hospital was negligent because it allowed caustic drain cleaner into the sink, when the sink was not to be used.

The Hospital moved for summary judgment on the ground that Chapter 95 of the Texas Civil Practices and Remedies Code bars Vanderbeek's claim. Vanderbeek responded that a fact issue remained as to whether the Hospital assumed the duty of taking the sink out of service based on the following evidence:

- At least one Hospital plumber and two Hospital maintenance employees were called to address drainage problems with the sink between the time Vanderbeek created the temporary door (November 2, 2002) and the date on which the liquid came out of the pipe (December 27, 2002);
- The sink was removed prior to December 27, 2002;
- A caustic substance remained in the pipe, and test results from Vanderbeek's pants revealed that the caustic substance was consistent with the composition of the drain cleaner "Glug," a product commonly used by the Hospital.

The trial court granted the Hospital's motion. Vanderbeek now appeals the trial court's decision and contends that (1) the Hospital failed to conclusively prove that Chapter 95 of the Texas Civil Practices and Remedies Code applies to his negligence claim and (2) even if Chapter 95 applies, the trial court erred in granting

the motion for summary judgment because Vanderbeek raised a genuine issue of fact as to whether the Hospital exercised or retained sufficient control over the manner in which the work was performed.

## II. ISSUES PRESENTED

Vanderbeek presents the following issues for review:

(1) Does Chapter 95 apply to claims grounded not in vicarious liability but solely in a premises owner's own negligence?

(2) Did the Hospital conclusively prove that Chapter 95 applies to Vanderbeek's negligence claims?

(3) Did the trial court improperly shift the summary-judgment burden of proof to Vanderbeek to create a fact issue in the application of Chapter 95 to his claims?

(4) Alternatively, under Chapter 95, may a premises owner like the Hospital undertake its own independent work or tamper with subcontractors' work on projects on its property yet escape liability for injuries sustained by those subcontractors or their employees resulting from such acts?

(5) In the alternative, does a fact issue exist concerning whether Chapter 95 bars Vanderbeek's claims?

## III. STANDARD OF REVIEW

We review issues of statutory construction de novo. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex.2002). When a statute is clear and unambiguous, we need not resort to extrinsic aids to define the meaning of the statute. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). When, as in this case, the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *Id.*; *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993);

*Dyall v. Pasadena Paper Co.*, 152 S.W.3d 688, 708 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (en banc) (determining the legislative intent behind Chapter 95 of the Texas Civil Practice and Remedies Code by examining the plain meaning of the words of the statute.)

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex.2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## IV. ANALYSIS

**A. Did the trial court err in determining that the summary-judgment evidence conclusively proves that Chapter 95 applies to Vanderbeek's claim?**

Vanderbeek argues in his main issue that the trial court erred in determining that the summary-judgment evidence conclusively proves that Chapter 95 bars his negligence claim against the Hospital. Vanderbeek asserts that Chapter 95 does not apply because his negligence claim is predicated solely upon the negligence of the Hospital, as the premises owner, rather than on the negligence of other independent contractors.

Chapter 95 of the Texas Civil Practice and Remedies Code governs a property owner's liability for acts of independent contractors. TEX. CIV. PRAC. & REM.CODE ANN. § 95.001 (Vernon 2005). Under section 95.001, a "claim" involves "a claim for damages caused by negligence." *Id.* § 95.001(1). A "property owner" is a "person or entity that owns real property primarily used for commercial or business purposes." *Id.* § 95.001(3). Section 95.002 specifically applies Chapter 95 to a negligence claim

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

*Id.* § 95.002 (Vernon 2005). Under Chapter 95, the Hospital is a property owner. *See id.* § 95.001(3). In asserting his claim, Vanderbeek attempts to hold the Hospital liable for personal injury. *See id.* §§ 95.001(1), 95.002(1). Vanderbeek is an employee of Humphrey Plumbing, a contractor for the Hospital. *See id.* § 95.002(1). Vanderbeek's negligence claim arises from the condition or use of the Hospital building, which is an improve-

ment to real property. *See id.* § 95.002(2). The contractor (Humphrey Plumbing) repaired, renovated, or modified the Hospital building. *See id.* § 95.002(2). The summary-judgment evidence conclusively proves that Vanderbeek's claim meets all of the section 95.002 requirements.

Additionally, under the plain language of section 95.003, property owners are not liable for negligence claims covered by Chapter 95 unless two conditions are met: (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn. *Id.* § 95.003 (Vernon 2005). If section 95.002 made Chapter 95 inapplicable to negligent property owners, then section 95.003 would be unnecessary. *See Francis v. Coastal Oil & Gas Corp.,* 130 S.W.3d 76, 84 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (concluding that section 95.003 imposes proof of control and knowledge as prerequisites to liability for negligence and that Chapter 95 does not protect only "passive" owners).

Vanderbeek makes three arguments urging the inapplicability of Chapter 95. First, Vanderbeek argues that Chapter 95 does not apply because the negligence in this case resulted from the Hospital's actions, as premises owner, in allowing a caustic substance into the drain. Vanderbeek asserts that Chapter 95 is intended to protect only passive property owners. According to Vanderbeek, the omission of "property owner" from section 95.002(2) means that a negligent property owner is excluded from the category of property owners protected by Chapter 95.

Under its unambiguous language, Chapter 95 governs negligence claims against a property owner for personal injury, death, or property damage to contractors, subcontractors, or an employee of either if the claim arises from the condition or use of an improvement to real property and if the contractor or subcontractor constructs, repairs, renovates, or modifies the improvements. *Id.* § 95.002. Section 95.002 does not limit the scope of Chapter 95 based on the acts, omissions, or nature of the alleged negligence of the property owner. *Id.*

 Appellant is correct in noting that section 95.002(1) includes "property owner" as a possible defendant, though "property owner" is excluded from the actors mentioned in 95.002(2). *See Francis,* 130 S.W.3d at 80, 83 (examining the applicability of Chapter 95 involving a negligent owner and the same passive-owner argument). However, Chapter 95 does not protect only "passive" property owners against claims of negligence. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003; *Francis,* 130 S.W.3d at 84. When the property owner is negligent, liability will be triggered under section 95.003 only when the actions of the property owner satisfy both conditions of control and knowledge. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003; *Francis,* 130 S.W.3d at 84. Applying this reasoning to the present case, we conclude that Chapter 95 applies to Vanderbeek's claim, and as a result, the Hospital is shielded from liability under this statute unless each of the two conditions required to trigger owner liability under section 95.003 are proved.

 Moreover, in determining the applicability of Chapter 95, we evaluate the actions of Vanderbeek and Humphrey Plumbing and not the actions of the Hospital. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.002. Upon finding that Chapter 95

controls, then under section 95.003, a court reviews the Hospital's actions in considering whether those actions constitute the control and actual knowledge needed to impose liability, but section 95.003 does not determine the applicability of Chapter 95. *Compare id.* (governing applicability of Chapter 95), *with id.* § 95.003 (imposing prerequisites of control and knowledge to a property owner who is otherwise subject to Chapter 95).

Vanderbeek makes two additional arguments regarding the applicability of Chapter 95. First, he argues the Hospital's summary-judgment evidence did not conclusively prove that Chapter 95 applies. This argument fails because, as explained above, the Hospital conclusively established all elements of applicability required in section 95.002. Next, Vanderbeek argues that the trial court improperly shifted the burden to him to prove that Chapter 95 does not apply. In reviewing a summary judgment, we must consider whether the Hospital carried the burden at the trial court level by showing that there was no genuine issue of material fact such that the judgment should have been granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). Because the Hospital conclusively proved that Chapter 95 applies by meeting the requirements of section 95.002, summary judgment was properly granted, and the trial court did not improperly shift the burden to Vanderbeek.

## B. Did the trial court err in granting summary judgment because there is a genuine fact issue as to the element of control?

Vanderbeek argues that even if Chapter 95 applies, the trial court erred in granting summary judgment because the summary-judgment evidence raises a fact issue on the element of control. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003. The third section of Chapter 95 limits a property owner's liability:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner **exercises or retains some control over the manner in which the work is performed,** other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* (emphasis added). Therefore, control and actual knowledge are the two independent and necessary elements to impose liability. *Kelly v. LIN Television of Tex., L.P.*, 27 S.W.3d 564, 567 (Tex.App.-Eastland 2000, pet. denied).

Control can be contractual or actual. *Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 606 (Tex.2002). Neither party alleges contractual control; thus, in this case we focus only on actual control. Actual control is control over the manner in which the work is performed. *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155, 157 (Tex.1999) (finding that a safety representative's instruction to subcontractor's employees in performing safer work methods did rise to the level of actual control required for liability). Moreover, having control of the facilities does not satisfy the requirement for control in section 95.003. *Dyall,* 152 S.W.3d at 701 (en banc) (concluding that

success or failure of an attempt to eliminate a hazard in a facility does not demonstrate "control over the manner in which the work is performed").

■ The record contains no summary-judgment evidence indicating that the Hospital controlled the timing, sequence, or manner of Vanderbeek's work. *See Koch Ref. Co.*, 11 S.W.3d at 155, 157; *Kelly*, 27 S.W.3d at 571. Vanderbeek produced evidence that (1) the Hospital assumed the duty to take the sink out of service, (2) a Hospital employee attempted to use the sink and discovered that it would not drain, (3) Hospital maintenance employees were called to unclog the sink, at which time drain cleaner may have been poured into the sink, (4) a different Hospital employee was called on two occasions to unclog the sink, (5) the sink was finally removed by Hospital employees, and (6) a caustic substance remained in the pipe. Vanderbeek argues that the Hospital exercised control over the manner in which he performed his work in that, by allowing a caustic substance into the pipe line, the Hospital changed the manner in which he should perform his work to avoid injury. If we were to embrace this argument, we would be extending the definition of "control" beyond the plain meaning of the statute.

Vanderbeek admits that no Hospital employee told him to reconnect the pipe. Likewise, Vanderbeek admits that he assumed nothing had been placed in the sink since he first capped the pipes several weeks before. No Hospital employees were present when Vanderbeek reconnected the pipe. Although Vanderbeek's evidence establishes that the Hospital had control of the facility, as a matter of law the summary-judgment evidence proves that the Hospital did not have control over the manner in which Vanderbeek performed his job, which is required to satisfy section 95.003. *See* Tex. Civ. Prac. & Rem. Code Ann. § 95.003(1); *Dyall*, 152 S.W.3d at 701–10. Under the applicable standard of review, we conclude that the trial court did not err by granting summary judgment in favor of the Hospital.

Accordingly, we overrule Vanderbeek's issues and affirm the trial court's judgment.