Reversed and Remanded and Plurality, Concurring, and Dissenting Opinions
filed March 31, 2009








Reversed and
Remanded and Plurality,
Concurring, and Dissenting Opinions filed March 31, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00341-CV

____________

 

DAVID HERNANDEZ, Appellant

 

V.

 

BRINKER INTERNATIONAL, INC., Appellee

 



 

On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 2005-63422

 



 

D I S S E N T I N G   O P I N I O N

The plurality concludes that chapter 95 of the Texas Civil
Practice and Remedies does not apply to Hernandez=s claims against
Brinker because his claims arise from the condition of the roof rather than the
air conditioning system that he was repairing.  Because I disagree with this
analysis, I respectfully dissent from the plurality.[1]








The plurality concludes that under section 95.002(2), the
improvement that gives rise to the injury claim must be the same improvement
the contractor was at the premise to address at the time of the injury.  This
is based on the plurality=s narrow interpretation of the concept of
improvement that rejects the idea of a building or overall structure as an
improvement, focusing instead on the parts of the structure and concluding that
the roof and air conditioning system are separate improvements.  I agree with
the plurality that a roof or air an conditioning system can be separate
improvements.  However, it is also clear that an entire structure can be an
improvement.[2] 
Thus, when section 95.002(2) states that chapter 95 applies only to a claim
arising from Athe condition or use of an improvement@ where the
contractor Aconstructs, repairs, renovates, or modifies the
improvement,@ it is unclear whether the improvement contemplated is
the overall structure, part of the structure, or both.  Because the statutory
language is ambiguous, it is appropriate to seek guidance from legislative
history in interpreting it.  See Alex Sheshunoff Mgmt. Servs., L.P. v.
Johnson, 209 S.W.3d 644, 651B52 & n.4 (Tex.
2006) (considering legislative history in statutory interpretation appropriate
where statutory language is indefinite, ambiguous, or nebulous).








The 74th Legislature passed a sweeping tort reform package,
including Senate Bill 28.  See Dyall v. Simpson Pasadena Paper Co., 152
S.W.3d 688, 699 (Tex. App.CHouston [14th Dist.] 2004, pet. denied). 
Chapter 95 was part of Senate Bill 28, and in the debate on the floor of the
House of Representatives before the final reading and passage of the bill, one
of its sponsors, Rep. Combs, explained the purpose of chapter 95:

[I]t recognizes the fact that there are a number of property owners who
do not exercise control over construction projects beyond simply hiring someone
to do it, and you do not have any knowledge of any defect on the property.  In
that case, there is no liability to the property owner for personal injury,
death, or property damage to a contractor, subcontractor, or an employee of
those who are working on that piece of property who constructs, repairs, etc.
an improvement on there.

Debate
on Tex. S.B. 28 on the Floor of the House of Representatives, 74th Leg., R.S.
(May 3, 1995) (statement of Rep. Combs) (tape 103 available from House of
Representatives Video/Audio Department), quoted in Fisher v. Lee & Chang
P=ship, 16 S.W.3d 198,
201 (Tex. App.CHouston [1st Dist.] 2000, pet. denied).  Rep. Combs
repeatedly emphasized the need to provide a way for a property owner not
actively involved with the property to hire a contractor without assuming
liability for injuries caused by conditions of which the owner was unaware. 
Rep. Turner, on the other hand, was concerned that chapter 95 would have
unintended consequences, such as allowing a plant owner to hire contractors to
perform all its work, turn a blind eye to safety, and escape liability for
injuries caused by a plant explosion.  See id. (statements of Reps.
Combs and Turner).  After an extensive exchange between Rep. Combs and Rep.
Turner, Rep. Junell, a Senate Bill 28 co-sponsor, revisited this issue during
the next day=s floor debate in response to a question from Rep.
Eilan about the Alegislative intent@ of the bill. 
Debate on Tex. S.B. 28 on the Floor of the House of Representatives, 74th Leg.,
R.S. (May 4, 1995) (statements of Reps. Eilan and Junell) (tape 104 available
from House of Representatives Video/Audio Department).  Rep. Junell further
clarified the bounds of chapter 95:

If there is an incident that is not related to the work being done by
the contractor and subcontractor, then this chapter does not apply to that.  So
if you have an explosion that=s not related to anything that the contractor and subcontractor are
doing for their purpose of being there, then this chapter would not apply.








Id. (statement of
Rep. Junell), quoted in Fisher, 16 S.W.3d at 202.

Far from Aisolated statements by individual
legislators,@[3] the idea that
chapter 95 was intended to apply to injuries related to a contractor=s work was the
culmination of an extended discussion over two days between several
legislators, including two sponsors.  This legislative history clearly
indicates that it was important to chapter 95=s sponsors to
distinguish between injuries to a contractor that were related to the work
being done and those that were not, and it supports a broader interpretation of
section 95.002(2) than suggested by the plurality, which narrowly interprets
the improvement at issue and requires the specific improvement actually cause
the injury.








I would conclude that chapter 95 applies here because
Hernandez=s injury was sufficiently related to the work for
which he was hired.  Although Brinker did not hire Hernandez to repair the
damage to the roof, it did hire him to repair the air conditioning unit, which
was on the roof.  Thus, the job for which Brinker hired Hernandez necessarily
required that he be on the roof.  Hernandez was injured as he was performing
this work when he fell through a portion of the roof right next to the air
conditioning unit.  This is factually similar to other cases in which courts
have found that such an injury was included within chapter 95.  See Bryan v.
Shell Offshore Inc., 179 F. App=x 906, 907, 909
(5th Cir. 2006) (holding chapter 95 covered injury to contractor hired to
renovate offshore oil platform who stepped through wooden deck board in course
of work); Clark, 2006 WL 229901, at *1B2 (concluding chapter
95 applied to claim of contractor who stepped through concealed skylight
opening while on roof to work on plumbing fixtures).  Hernandez claims that
following this relatedness rationale would essentially nullify chapter 95.  We
need not decide in this case whether other courts have gone too far in applying
this standard.  See, e.g., Spears v. Crown Cent. Petroleum Corp.,
133 F. App=x 129, 130B31 (5th Cir. 2005)
(finding chapter 95 covered claim of contractor injured after tripping over
hose while walking to work site); Franks v. Chevron Corp., Civil Action
No. 3:06-cv-506, 2007 WL 2330296, at *6B7 (S.D. Tex. Aug.
13, 2007) (holding chapter 95 applied to claim of contractor injured on vessel
transporting him to work site on offshore oil platform).  I would merely hold
that in this case, Hernandez=s injury from falling through the roof in
the course of performing work that must be done on the roof is sufficiently
related to his reason for being on the premise to be covered by chapter 95.

 

 

/s/      Leslie B. Yates

Justice

 

 

Panel consists of
Justices Yates, Anderson, and Brown (Brown, J., plurality, Anderson, J.,
concurring).









[1]  I also dissent from the concurrence.  The
concurrence concludes that summary judgment was improper because no summary
judgment evidence established that Brinker was the property owner.  This
argument was not made by either party, either in the trial court or on appeal. 
It is improper to reverse on unpreserved, unassigned error.  See Walling v.
Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (AWe have held repeatedly that the courts of appeals may not reverse the
judgment of a trial court for a reason not raised in a point of error.@); Tello v. Bank One, N.A., 218 S.W.3d 109, 118
(Tex. App.CHouston [14th Dist.] 2007, no pet.) (stating that
issues not raised to trial court during summary judgment proceedings cannot be
raised for the first time on appeal).





[2]  See Vanderbeek v. San Jacinto Methodist Hosp., 246 S.W.3d 346, 348, 350B51 (Tex. App.CHouston [14th Dist.] 2008, no pet.)
(chapter 95 case; contractor injured while working on pipes; hospital building
was improvement); Clark v. Ron Bassinger, Inc., No. 07-03-0291-CV, 2006
WL 229901, at *1B2 (Tex. App.CAmarillo Jan. 31, 2006, no pet.)
(mem. op.) (chapter 95 case; contractor injured while working on plumbing
fixtures on roof and stepped through skylight opening; house was improvement); see
also Norris v. Thomas, 215 S.W.3d 851, 854B55 (Tex. 2007) (discussing house as improvement
under Property Code and homestead law); Matagorda County Appraisal Dist. v.
Coastal Liquids Partners, L.P., 165 S.W.3d 329, 335 (Tex. 2005) (discussing
buildings and fixtures as improvements under Tax Code); Kelly v. Lin
Television of Tex., L.P., 27 S.W.3d 564, 570 (Tex. App.CEastland 2000, pet. denied) (citing
Black=s Law Dictionary in defining improvement in a
chapter 95 case).





[3]  Cf. Canal Ins. Co. v. Hopkins, 238 S.W.3d
549, 563 (Tex. App.CTyler 2007, pet. denied) (discounting senator=s statement made in committee on an issue never
discussed by the whole House or Senate).