**Reverse and Render; Opinion Filed February 8, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01277-CV

**THE DOW CHEMICAL COMPANY, Appellant**

**V.**

**MAGDALENA ADRIENNA ABUTAHOUN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE HEIRS AND ESTATE OF ROBERT WAYNE HENDERSON, DECEASED; AND TANYA ELAINE HENDERSON, INDIVIDUALLY IN HER OWN RIGHT AND AS NEXT FRIEND OF ZA'QUOIA ZANICE HENDERSON, A MINOR, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-07003**

# OPINION

Before Justices Moseley, Francis, and Lang
Opinion By Justice Lang

This is an appeal by The Dow Chemical Company ("Dow") complaining of a judgment obtained by appellees on their wrongful death and survivor claims against Dow.[1] The disposition of this appeal turns on whether Chapter 95 of the Texas Civil Practice and Remedies Code applies to the particular facts in this case and thereby limits Dow's liability. *See* TEX. CIV. PRAC. & REM.

---

[1] Appellee Magdalena Adrienna Abutahoun, an adult daughter of the deceased, Robert Wayne Henderson, filed suit individually and as personal representative of the heirs and estate of Mr. Henderson. Appellee Tanya Elaine Henderson, Mr. Henderson's surviving spouse, sued individually and as next friend of Za'Quoia Zanice Henderson ("ZZ"), Mr. Henderson's minor daughter.

CODE ANN. §§ 95.001–.004 (West 2011).[2]

Appellees filed this action against multiple defendants following the death of Robert Wayne Henderson. Appellees alleged in part that Mr. Henderson's death was caused by exposure to asbestos products and asbestos-containing dust from various sources, including Dow's Freeport, Texas facility. Mr. Henderson had performed work at the Freeport facility while employed by a Dow contractor, Win-Way Industries, Inc. ("Win-Way").

At the same time Mr. Henderson and his fellow employees of Win-Way performed work at the Freeport facility, including installing asbestos-containing insulation on pipes, Dow's own employees worked just a few feet away, tearing off old pipe insulation and insulating pipes. Specifically, Mr. Henderson testified the Dow employees were doing the "same kind of work" Win-Way employees were doing.

At trial, appellees asserted that the limitations of liability afforded under Chapter 95 did not apply to their claims. Specifically, they argued that the claims against Dow were not based upon the asbestos exposure to Mr. Henderson from the actions of the Win-Way employees in working with the insulation. Rather, the claims are based upon Mr. Henderson's exposure to asbestos arising from the work done by Dow's employees who worked near Win-Way's employees.

Some background will illustrate the posture in which the case came to trial. The case was transferred from the 160th Judicial District Court in Dallas County (the "trial court"), where it was

---

[2] The pertinent provision of Chapter 95 is section 95.003, which reads

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> > (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
> >
> > (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003.

originally filed, to the asbestos multi-district litigation pretrial court in Harris County (the "MDL pretrial court") for pretrial proceedings. *See* TEX. GOV'T CODE ANN. § 74.162 (West 2005). Dow moved for summary judgment in the MDL pretrial court, arguing appellees' claims against it were barred by Chapter 95.

The MDL pretrial court granted summary judgment in favor of Dow as to all of appellees' claims alleging Mr. Henderson "was injured by exposure to respirable asbestos as the result of the activities of [Mr. Henderson] and/or the activities of other employees of [Mr. Henderson's] employer on any premises of [Dow]" and denied Dow's summary judgment motion as to all other claims against it, including "claims that [Mr. Henderson] was injured by virtue of the activities of Dow [e]mployees." Then, the case was remanded to the trial court, where a jury trial was held on the remaining claims. The jury returned a verdict in which it found Dow negligent and attributed thirty percent of the responsibility for Mr. Henderson's injuries to Dow. Based on that verdict, and after applying several adjustments, the trial court rendered judgment against Dow in the amount of $2.64 million plus interest and costs of court.[3]

On appeal, Dow asserts four issues. First, Dow contends, "Contrary to the [MDL pretrial court's] ruling on Dow's motion for summary judgment, . . . Chapter 95 does not distinguish between a property owner's liability for exposures caused by the activities of contractors and their employees, on the one hand, and exposures caused from its own employees' activities, on the other." Therefore, Dow asserts, Chapter 95 applies to all of appellees' claims against Dow. Dow argues it is entitled to judgment as a matter of law because there was no evidence at trial that Dow had both control over Mr. Henderson's work and actual knowledge of the danger or condition resulting in his illness, as required by Chapter 95, and the trial court failed, over Dow's objection, to charge the jury

---

[3] Appellees' claims against all other defendants were resolved prior to submission of the case to the jury.

as to those elements.

Additionally, Dow contends that even if Chapter 95 does not bar all of appellees' claims, (1) the evidence of "substantial-factor causation" resulting from the activities of Dow employees was not legally or factually sufficient; (2) the evidence was legally and factually insufficient to support certain amounts awarded by the jury to Tanya and ZZ Henderson, Abutahoun, and Mr. Henderson's estate; and (3) the closing argument of appellees' counsel was improper and incurable.

We decide in favor of Dow on its first issue. Accordingly, we need not address Dow's remaining issues. We reverse the trial court's judgment and render a take-nothing judgment in favor of Dow.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In their live petition at the time of trial, appellees asserted claims against Dow under theories of premises liability, negligence, gross negligence, and conspiracy. Specifically, appellees asserted in part that Dow failed to keep its premises in reasonably safe condition and failed to warn Mr. Henderson of "dangerous ongoing activities, namely the use, application, and clean-up and removal of asbestos-containing products."

Dow filed a general denial answer in which it asserted, *inter alia*, that appellees' claims "are subject to and must be established in accordance with" Chapter 95. Additionally, following the transfer of this case to the MDL pretrial court, Dow filed a motion for summary judgment based on civil practice and remedies code section 95.003. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. In that motion, Dow stated in part

> Pursuant to [section 95.003], a premises owner is not liable for injuries sustained by an independent contractor's employee as a result of failing to provide a safe workplace in an action arising from the condition or use of an improvement to real property where the contractor constructs, repairs, renovates, or modifies the improvement, unless the owner (1) exercised *control* over the contractor's work <u>and</u> (2) had *actual knowledge* of the dangerous condition. According to Mr. Henderson's

deposition testimony, while working on [Dow's] premises, he worked for a single independent contractor. Additionally, his deposition testimony indicates that [Dow] did not exercise any control over his work. As such, there is no issue of material fact and Mr. Henderson's negligence claims, and all other claims deriving therefrom, against [Dow], the premises owner, must be dismissed as a matter of law.

(emphasis original). Attached as an exhibit to Dow's motion for summary judgment were excerpts from a pre-suit deposition of Mr. Henderson in which he testified in part (1) he worked as an insulator helper and insulator at Dow's Freeport facility while employed by Win-Way in 1967 and 1968 and (2) he did not recall taking instructions about his work from any Dow employee.

In their response to Dow's motion for summary judgment, appellees contended Dow's argument was flawed for two reasons. First, appellees asserted Chapter 95 does not control this case because Dow "caused Mr. Henderson's injuries through its own actions, which did not involve the work Mr. Henderson was performing on its premises." Specifically, appellees stated

> The improvement giving rise to the [sic] Mr. Henderson's injury claim was not the same improvement that Mr. Henderson was at Dow's premises to address at the time of his injury. Mr. Henderson was at Dow for Win-Way, helping insulators by mixing up insulation cement. While he was doing this however, Dow employees were spending 8-10 hours per week within 5 to 10 feet of Mr. Henderson tearing off pipe insulation and sawing and cutting block insulation.
> . . . .
> Therefore, because Dow substantially contributed to [Mr. Henderson's] injuries by exposing him to air at its premises contaminated with asbestos dust and fibers due to the work of its employees, as opposed to the work that Mr. Henderson was on Dow's premises to perform, Chapter 95 does not apply to this case, because the improvement giving rise to Mr. Henderson's injury (the removal of insulation from steam lines by Dow employees) was not the same improvement that Mr. Henderson was addressing on Dow's premises (helping re-insulate different lines and vessels).

In support of that argument, appellees cited a portion of Mr. Henderson's pre-suit deposition testimony, a full copy of which was attached to appellees' response as evidence.[4]

---

[4] The portion of Mr. Henderson's pre-suit deposition testimony cited by appellees read, in part, as follows:

Q. When you were with Win-Way, were there any other people that you would have worked around?

−5−

Second, appellees argued that even if Chapter 95 does apply, Dow owed Mr. Henderson a duty pursuant to Chapter 95 because Dow "retained some control over the work which caused his injuries, i.e. the work of its own employees" and "Dow also retained some control over all asbestos work at its plant, and retained some control over all contractors working at its facility." According to appellees,

> [B]oth Mr. Henderson and Dow employees were working within feet of each other, and both were working on insulation—the Dow employees were involved in demolition of pipe insulation, while Mr. Henderson was helping Win-Way insulators re-insulate. Therefore, even if the Court excepts [sic] that Mr. Henderson and the Dow insulators were not working on different tasks, and that therefore Mr. Henderson's injuries did indeed stem from the work he was on Dow's premises to perform, Dow would still nonetheless have owed Mr. Henderson a duty, because it exercised some control over the injury causing work since it obviously had control of its own employees.

As described above, the MDL pretrial court granted, in part, Dow's motion for summary

---

A. We had Dow employees also insulating or tearing off insulation.

Q. Mr. Henderson, can you explain to the jury why you, as a contractor employee, would be working around Dow employees doing the same kind of work?

A. Well, they'd have a lot of work that needed done and they didn't have the people to do it. So they hired the contractors to come in to do the insulation.

Q. Can you tell the jury, either in a weekly basis or a percentage basis, how often you would work around Dow insulators doing their work?

A. We'd probably be around them two to three days a week.

. . . .

Q. Well, let me ask you this first: At times, can you give the jury and—and the judge a range or how close you would be to the Dow insulators when they were doing their work around you?

A. 5 to 10 feet.

Q. Now, I need to do this for the record, but can you explain to the jury what you saw Dow insulators doing around you during the time frames you just mentioned a moment ago?

A. They were insulating and also tearing off old insulation and reinsulating.

Q. Take us through the process, sir, on what Dow insulators would do when you say they were insulating. Take us through the steps, sir, because I need to have that for the record.

A. They would be in the pipe rack, putting pipe covering on and doing the same thing we did. They cut it and work around flanges and valves. And a lot of times when they'd remove it, the old stuff, they'd take hammers and beat it. And chunks of it would fall to the ground. They'd let the big pieces down by rope but, you know, when you break it with a hammer and stuff, it—the chunks fall. And it's a lot of dust in the air.

judgment and the case proceeded to jury trial in the trial court. Following appellees' presentation of evidence, Dow moved for a directed verdict on "all claims in the Plaintiffs' case." The trial court denied that motion.

During the charge conference, Dow renewed its motion for directed verdict and, *inter alia*, objected to question number one of the charge of the court, which stated as follows:

> Did the negligence, if any, of those named below proximately cause the injuries of ROBERT WAYNE HENDERSON?
> With respect to The Dow Chemical Company, you may consider only the activities of The Dow Chemical employees at Dow Chemical Company facilities.
>
> Answer "YES" or "NO" as to each of the following:
>
> The Dow Chemical Company        _____
> . . . .
> Robert Wayne Henderson        _____

"Negligence" was defined in the charge of the court as "failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances."

Dow asserted, in part, (1) question number one incorrectly stated the law because any negligence claim regarding Mr. Henderson's exposure to asbestos at Dow's Freeport facility was subject to Chapter 95 and (2) an answer to question number one would be immaterial because appellees' common law claims were barred by Chapter 95. Dow's objections and renewed motion for directed verdict were overruled by the trial court. Additionally, Dow requested jury instructions and questions pertaining to Dow's "control over the manner in which the work was performed" and Dow's "actual knowledge of the danger" to Mr. Henderson, which the trial court denied.

Following the jury's verdict, Dow filed a motion for judgment notwithstanding the verdict in which it argued in part that such relief was appropriate "[b]ecause Chapter 95 applies to all of the

plaintiffs' negligence claims against Dow, and because the plaintiffs failed to establish that Dow had either control over Mr. Henderson's work or actual knowledge of the dangers complained of." Additionally, Dow contended that contrary to the pretrial ruling on Dow's motion for summary judgment, "Chapter 95 does not distinguish between a property owner's liability for the activities of independent contractors and their employees and its liability to 'bystanders' exposed as a result of its own employees' activities."

In their response to Dow's motion for judgment notwithstanding the verdict, appellees contended in part that the MDL pretrial court "correctly determined that Chapter 95 does not apply to claims arising from injuries caused by Dow's own employees, and even if Chapter 95 applies, Plaintiffs conclusively established that Dow is liable under that provision." According to appellees' response, "the heightened evidentiary requirements of § 95.003 only apply if the injured contractor was engaged to 'construct, repair, renovate or modify an improvement to real property' *and* the hazard arose out of that contractor's work." (emphasis original). Appellees asserted such circumstances were not present in this case. Further, as to satisfaction of the requirements of Chapter 95, appellees contended (1) "there can be no rational dispute that Dow retained the requisite control because the only activities at issue are the activities of Dow's own employees in removing and installing asbestos-containing material near Mr. Henderson" and "[a]s a matter of law, Dow controlled the means, methods or details of its employees' work" and (2) the evidence establishes as a matter of law that Dow "had actual knowledge of the dangers associated with asbestos before Mr. Henderson was exposed to asbestos dust at the Freeport facility" and "did nothing to warn or protect Mr. Henderson from the hazards of asbestos." After a hearing, the trial court denied Dow's motion for judgment notwithstanding the verdict.

Following the trial court's rendering of the judgment described above, this appeal was timely

filed.

## II. LIABILITY UNDER CHAPTER 95

In its first issue, Dow argues that "[b]ecause Chapter 95 applies to all of [appellees'] negligence claims against Dow, and because [appellees] failed to establish that Dow had both control over Mr. Henderson's work and actual knowledge of the dangers complained of, this Court should render judgment for Dow."

Appellees respond, in part, that Dow cannot "avail itself of the heightened protections afforded by Chapter 95" because appellees' claims against Dow "are based solely upon the negligent activities of Dow employees, and not from injury arising from the condition or use of an improvement of real property by Mr. Henderson." Further, appellees assert, "Given that Chapter 95 does not apply, Dow's liability for negligence is governed by the common law, and [appellees] do not have to prove 'control' or 'actual knowledge.'"

### A. Standard of Review and Applicable Law

We review the denial of a motion for judgment notwithstanding the verdict under a no-evidence standard, meaning we "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* (citing *Keller* at 827).

When an appellant challenges the trial court's construction of a statute or application of the law, the standard of review is de novo. *See, e.g., Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex.

2011); *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312–13 (Tex. 1999). Our primary objective in construing statutes is to give effect to the Legislature's intent. *Molinet*, 356 S.W.3d at 411 (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009)). The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *Id.* (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). If a statute is clear and unambiguous, we need not resort to rules of construction or other aids to construe it. *In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001). "Even then, however, we may consider, among other things, the statute's objectives, its legislative history, and the consequences of a particular construction." *Id.*; *see* TEX. GOV'T CODE ANN. § 311.023 (West 2005).

Chapter 95 of the Texas Civil Practice and Remedies Code applies only to a claim that (1) is asserted against "a property owner, contractor, or subcontractor" for "personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor" and (2) "arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." TEX. CIV. PRAC. & REM. CODE ANN. § 95.002. "'Claim' means a claim for damages caused by negligence, including a counterclaim, cross-claim, or third party claim." *Id.* § 95.002. Pursuant to section 95.003,

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003. The plaintiff has the burden to prove both control and actual knowledge. *See Gorman v. Ngo H. Meng*, 335 S.W.3d 797, 802 (Tex. App.—Dallas 2011, no pet.); *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 83 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Further, "having control of the facilities does not satisfy the requirement for control in section 95.003." *Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 352 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "[T]o be liable, the owner must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way." *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 123 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

### B. Analysis

Dow contends that "[b]y drawing a distinction . . . between exposures caused by the activities of an independent contractor and those caused by the premises owner, which is not supported by Chapter 95, the [MDL pretrial court] infected the trial with error." According to Dow, such distinction "is of no consequence with respect to the applicability of Chapter 95." Further, Dow argues (1) "the 'improvement' from which Mr. Henderson's exposure arose as the result of Dow's activities was the same improvement on which Win-Way was hired to work," namely "the asbestos-insulated piping in the Freeport plant," and (2) the "presence of asbestos" was a "condition" of such improvement from which Mr. Henderson's asbestos exposure arose. Therefore, Dow asserts, Chapter 95 is applicable. In support of its argument, Dow cites, *inter alia*, *Gorman*. *See* 335 S.W.3d

at 797.

Appellees contend Dow's position respecting Chapter 95 is "contrary to the plain language of the statute, legislative intent, and public policy." Appellees assert that pursuant to *Hernandez v. Brinker International, Inc.*, 285 S.W.3d 152, 158 (Tex. App.—Houston [14th Dist.] 2009, no pet.), "Chapter 95 does not apply if the improvement giving rise to the contractor's injury claim was not the same improvement on which the contractor was working at the time of the injury." (Emphasis original to appellees' appellate brief.) Appellees state in a footnote in their appellate brief that "[n]ot only does Dow fail to cite any situation in which Mr. Henderson was working on the same improvement as the Dow employees, it was Dow's contention throughout trial that Mr. Henderson could not have been working in the same area as Dow employees, as the Dow insulators performed their work in an isolated manner." Further, appellees argue the Legislature did not intend Chapter 95 to apply in circumstances where there is "an incident that is not related to the work being done by the contractor," and this case involves such circumstances. Finally, during oral argument before this Court, appellees contended that in order for Chapter 95 to apply, "[t]he injury must arise and be precipitated by the contractor's work itself." According to appellees, "Mr. Henderson inhaled the asbestos dust arising from the activities of the Dow employees, and not his own work[;] therefore, Chapter 95 does not apply to [appellees'] claim arising from the negligence of Dow's own employees."

*Hernandez* involved a property owner, Brinker International, Inc. ("Brinker"), that operated a restaurant. *Id.* at 153. Brinker retained a contractor for maintenance and repairs to the restaurant's air-conditioning system, and the contractor assigned its employee David Hernandez to replace a compressor motor in an air conditioner located on the roof of the restaurant. *Id.* at 154. Hernandez removed the original compressor and planned to carry it to another location on the roof. *Id.* As he

stepped away from the air conditioner, the roof collapsed and he fell through the opening. *Id.*

Hernandez sued Brinker. *Id.* Brinker filed a motion for summary judgment contending Chapter 95 precluded Hernandez's recovery against it because Hernandez had not shown the requisite control over his work. *Id.* The trial court granted Brinker's summary judgment motion, and Hernandez appealed. *Id.* at 155. On appeal, Hernandez contended Chapter 95 would apply only if his claim arose from the condition or use of the improvement he was repairing, the air-conditioning system. *Id.* He argued that because his claim arose from the condition of a different improvement, the roof, Chapter 95 does not apply. *Id.* Brinker responded that the entire restaurant building was the "improvement," and the air conditioner was a mere "fixture" to the building. *Id.* at 156. In a plurality opinion, the appellate court reasoned

> The roof and the air-conditioning system are separate improvements to real property. Section 95.002(2) states that Chapter 95 applies only to a claim "that arises from the condition or use of an improvement to real property where the contractor or subcontractor [repairs or modifies] the improvement." Therefore, pursuant to the plain language of section 95.002(2), Chapter 95 does not apply to a contractor's employee's claim against a property owner when the improvement the condition or use of which gives rise to the injury claim is not the same improvement the contractor was at the premise to address at the time of injury.

*Id.* at 157–58. The appellate court concluded, "Hernandez's claim arises from the condition of the roof, but Hernandez did not repair or modify the roof. Hernandez repaired the air-conditioning system. Thus, under the plain language of section 95.002(2), Chapter 95 does not apply to Hernandez's claims." *Id.* at 161–62.

In *Gorman*, a convenience store owner, Meng H. Ngo, hired Sterling Scott Gorman to investigate an electrical problem with a walk-in cooler at the store. *Gorman*, 335 S.W.3d at 800–01. While doing so, Gorman was electrocuted when he came into contact with an ungrounded air conditioning condenser that had been modified to work as a refrigeration unit. *Id.* The condenser was situated on a pallet outside the store and was electrically connected to the cooler through the

–13–

store's breaker box. *Id.* Gorman's estate ("Gorman") sued Ngo and the installer of the walk-in cooler. *Id.* The trial court rendered a take-nothing judgment against Gorman, and Gorman appealed to this Court. *Id.* Gorman contended, in part, that the trial court erred by applying Chapter 95 to the claims against Ngo because the condenser was not the improvement on which Gorman was working. *Id.* at 804. In support of that argument, Gorman cited *Hernandez. Id.* at 805. This Court noted that the plurality opinion in *Hernandez* "appears to be a departure from the existing case law of other intermediate courts of appeals." *Id.* However, this Court determined that it need not decide that issue in the case before it. *Id.* at 806. Affirming the trial court's judgment, this Court stated

> Gorman was on the property to determine why customers of the store were being shocked when coming into contact with the doors of the walk-in cooler. The condenser was connected to the walk-in cooler and was intended to make the walk-in cooler functional. Gorman determined he needed to inspect the condenser in order to determine why the doors of the walk-in cooler were shocking customers of the store. We conclude Gorman was not injured by an improvement separate from the improvement that was the object of his work.

*Id.*

Appellees contend *Gorman* is distinguishable from the case at hand because in *Gorman* "the contractor's injury was caused by a condition or use of the improvement he was personally modifying or repairing." However, we find *Gorman* instructive. The record shows Mr. Henderson testified in his pre-suit deposition that Dow's Freeport facility was a large chemical plant with "[p]ipe racks all over the place." In 1967 and 1968, while employed by Win-Way, he worked at the Freeport facility as an "insulator helper" and as an insulator, applying asbestos-containing insulation material to pipes. Henderson stated that at the Freeport facility, he worked "around Dow employees doing the same kind of work" two or three days each week. He generally worked within five to ten feet of the Dow employees. Henderson testified the Dow employees were "insulating and also tearing off old insulation and reinsulating." He stated, "They would be in the pipe rack, putting pipe

covering on, and *doing the same thing we did.*" (emphasis added).

The customary meaning of "improvement" is "a permanent addition that increases the value of the property and makes it more useful." *Brown & Root, Inc. v. Shelton*, No. 12-01-00259-CV, 2003 WL 21771917, at *4 (Tex. App.—Tyler July 31, 2003, no pet.). "An improvement includes all additions to the freehold except trade fixtures that can be removed without injury to the property." *Reames v. Hawthorne-Seving, Inc.*, 949 S.W.2d 758, 761 (Tex. App.—Dallas 1997, writ denied). On this record, we conclude (1) the "improvement" Win-Way was hired to "repair, renovate, or modify" was the pipe system at Dow's Freeport facility and (2) the complained-of release of asbestos material resulted from Dow employees working on the same pipe system. Consequently, we conclude Mr. Henderson "was not injured by an improvement separate from the improvement that was the object of his work." *See Gorman*, 335 S.W.3d at 806. Further, we conclude appellees' claims arose from the condition of that pipe system, i.e., the presence of asbestos-containing pipe insulation that released asbestos particles as it was being torn and cut during the removal and replacement process. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002.

Next, we address appellees' argument that "[t]he injury must arise and be precipitated by the contractor's work itself" in order for Chapter 95 to apply. In support of that position during oral argument before this Court, appellees cited section 95.002(2) and *Francis*. As described above, section 95.002(2) states that Chapter 95 applies only to a claim "that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(2). We cannot agree with appellees that the plain language of section 95.002(2) requires, as appellees contend, that "it must be the worker who precipitates the harm." Rather, the language of section 95.002(2) makes no distinction between harm precipitated by the activity of a contractor and harm

–15–

precipitated by activity of another. *See id.*; *see also Vanderbeek*, 246 S.W.3d at 351–52 (rejecting argument that Chapter 95 is inapplicable to claim predicated solely on negligent actions of property owner). Additionally, appellees assert the court in *Francis* stated "[t]he 'failure to provide a safe workplace' [in section 95.003] means that the injuries must relate to work being done by the injured party, but the injury-producing defect need not be the object of the injured party's work." *Francis*, 130 S.W.3d at 83. However, even assuming without deciding that the "relate to" requirement of *Francis* is applicable, the record in the case before us shows, as described above, that the complained-of asbestos particles were released during Dow's removal and application of asbestos-containing insulation on the same pipe system on which Mr. Henderson was performing insulation work. As Mr. Henderson testified, Dow employees were "doing the same thing we did." Therefore, we cannot conclude the injuries in question did not "relate to" work being done by Mr. Henderson. *See id.*

Finally, we consider appellees' contention that Dow's position respecting Chapter 95 is contrary to "legislative intent." In support of that position, appellees cite legislative history pertaining to Chapter 95, including a debate prior to enactment in which the bill's sponsor, Rep. Robert Junell, responded to questions by Rep. Craig Eiland. *See* Debate on Tex. S.B. 28 on the Floor of the House of Representatives, H.J. of Tex., 74th Leg., R.S. II 157–58 (1995). The portion of that debate cited by appellees reads as follows:

Rep. Eiland: And if a plant explodes or if there is a release of chemicals that causes injury or property damage or death, will this chapter modify or increase the burden of proof or limit any of the recovery?

Rep. Junell: If there is an incident that is not related to the work being done by the contractor and the subcontractor, then this chapter does not apply to that. So, if you have an explosion that's not related to anything that the contractor and the subcontractors are doing for their purpose of being on there, then this chapter would not apply.

–16–

Rep. Eiland: So the plant owner, or the premise owner would still be responsible for their—

Rep. Junell: That's correct.

Rep. Eiland: —Personal negligence.

Rep. Junell: That's correct.

*Id.* Additionally, appellees cite a later "Statement of Legislative Intent" in which Rep. Junell stated in part "[i]t is the legislative intent of the authors that [Chapter 95] does not apply nor raise the burden of proof in situations where a property owner is negligent, separate and apart from exercising or retaining control over the manner in which the work is performed in a contract to construct, repair, renovate or modify an improvement to real property." H.J. of Tex, 74th Leg., R.S. 2611-12 (1995).

Appellees assert the legislative history described above "confirms" that the Legislature intended Chapter 95 to apply only where an incident is "related to the work being done by the contractor." However, we concluded above that the record in this case shows that requirement was satisfied. Moreover, while Texas law permits consideration of legislative history in interpreting a statute, "it does not permit elevating legislative debate statements over unambiguous statutory language." *Hernandez*, 285 S.W.3d at 159. Further, "isolated statements by individual legislators must be weighed against the clear language" of a statute. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 563 (Tex. App.—Tyler 2007, pet. denied). The parties in this case make no argument that Chapter 95 is ambiguous. Therefore, the plain meaning of the text is our primary focus in construing Chapter 95. *See Hernandez*, 285 S.W.3d at 159; *Canal Ins. Co.*, 238 S.W.3d at 563; *see also Molinet*, 356 S.W.3d at 411. The plain meaning of the text of Chapter 95 does not preclude its applicability where a claim is based upon negligent actions of the premises owner. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 95.001–.004; *Vanderbeek*, 246 S.W.3d at 351–52 (rejecting argument that Chapter 95 is inapplicable to claim predicated solely on negligent actions of property owner);

–17–

*Francis*, 130 S.W.3d at 83–84 (same); *see also Hernandez*, 285 S.W.3d at 161 (discussing *Vanderbeek*).[5]

On this record, we conclude Chapter 95 is applicable to all of appellees' claims against Dow. Therefore, appellees had the burden to show that both conditions of section 95.003 had been met before liability could be imposed upon Dow. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003; *Gorman*, 335 S.W.3d at 802; *Francis*, 130 S.W.3d at 83. The record shows appellees did not appeal, or otherwise assert error as to, the MDL pretrial court's summary judgment that Chapter 95 applied to their claims alleging Mr. Henderson "was injured by exposure to respirable asbestos as the result of the activities of [Mr. Henderson] and/or the activities of other employees of [Mr. Henderson's] employer on any premises of [Dow]." Nor did appellees request jury questions on the elements of control and actual knowledge required by section 95.003 or object to the omission of such questions at trial. Dow's objection to the absence of those questions precludes any implied findings on those issues in support of the judgment. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992); *Mangum v. Turner*, 255 S.W.3d 223, 227 (Tex. App.—Waco 2008, pet. denied). Moreover, appellees cite no evidence in the record, and we find none, showing Dow had "the right to control the means, methods, or details" of Mr. Henderson's work to the extent that he was "not entirely free to do the work his own way." *Abarca*, 305 S.W.3d at 123. Accordingly,

---

[5] In a January 16, 2013 post-submission letter brief filed in this Court, appellees assert that the court in *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 707–08 (Tex. App.—Houston [14th Dist.] 2004, pet. denied), "held that Chapter 95 does *not* apply where the injury is caused by the negligence of the premises owner." (emphasis original). According to appellees, "*Dyall* holds the complete opposite of what the Dow [sic] asserts." However, the portion of *Dyall* that addresses the applicability of Chapter 95 where an injury is caused by a property owner's negligence is not part of the court's holding in that case. *See id.; see also Traveler's Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 852 n. 3 (Tex. 1995) (explaining that dicta does not create binding precedent). The Fourteenth Court of Appeals in Houston subsequently addressed and resolved the same issue in *Vanderbeek. See Vanderbeek*, 246 S.W.3d at 351 ("When the property owner is negligent, liability will be triggered under section 95.003 only when the actions of the property owner satisfy both conditions of control and knowledge."). We do not find *Dyall* persuasive.

Additionally, appellees request in their post-submission letter brief that this Court "strike from consideration" a January 8, 2013 post-submission letter brief of Dow because Dow had opportunity to address the matters therein prior to submission. We deny appellees' request.

because the record does not support a finding of liability as to Dow pursuant to the requirements of Chapter 95, we conclude the trial court erred by not granting Dow's motion for judgment notwithstanding the verdict. *See Tanner*, 289 S.W.3d at 830.

We decide in favor of Dow on its first issue.

## III. CONCLUSION

We decide Dow's first issue in its favor. We need not reach Dow's remaining issues. We reverse the trial court's judgment and render a take-nothing judgment in favor of Dow.

_____
DOUGLAS S. LANG
JUSTICE

111077F.P05

–19–



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

THE DOW CHEMICAL COMPANY, Appellant

No. 05-11-01277-CV          V.

MAGDALENA ADRIENNA ABUTAHOUN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE HEIRS AND ESTATE OF ROBERT WAYNE HENDERSON, DECEASED; AND TANYA ELAINE HENDERSON, INDIVIDUALLY IN HER OWN RIGHT AND AS NEXT FRIEND OF ZA'QUOIA ZANICE HENDERSON, A MINOR, Appellees

Appeal from the 160th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. DC-10-07003).
Opinion delivered by Justice Lang, Justices Moseley and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellees Magdalena Adrienna Abutahoun, Individually and as Personal Representative of the Heirs and Estate of Robert Wayne Henderson, Deceased; and Tanya Elaine Henderson, Individually in Her Own Right and as Next Friend of Za'Quoia Zanice Henderson, a Minor, take nothing.

It is **ORDERED** that appellant The Dow Chemical Company recover its costs of this appeal from appellees Magdalena Adrienna Abutahoun, Individually and as Personal Representative of the Heirs and Estate of Robert Wayne Henderson, Deceased; and Tanya Elaine Henderson, Individually in Her Own Right and as Next Friend of Za'Quoia Zanice Henderson, a Minor. The obligations of Liberty Mutual Insurance Company as surety on appellant's supersedeas bond are **DISCHARGED**.

Judgment entered February 8, 2013.

DOUGLAS S. LANG
JUSTICE